UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Deborah L. Austin,**

      **Plaintiff,**

-v-                                        Case No. 2:05 -CV-0039
                                                   JUDGE SMITH
                                                   Magistrate Judge Kemp

**Ohio Department of Youth Services,** *et al.***,**

      **Defendants.**

## OPINION AND ORDER

Plaintiff Deborah Austin brings this action pursuant to 42 U.S.C. § 1983, asserting that Defendants deprived her of her property interest without due process by placing her on involuntary disability separation. Defendants move for judgment on the pleadings and/or for qualified immunity. (Doc. 6). For the reasons that follow, the Court grants Defendants' Motion for Qualified Immunity as to Defendants Lombardi and Duckworth, and denies Defendants Motion for Judgment on the Pleadings.

### I. Facts

Plaintiff Deborah L. Austin is an individual citizen of the State of Ohio. Plaintiff worked as an Office Assistant 3 at the Indian River Juvenile Correctional Facility of the Ohio Department of Youth Services ("ODYS"), a division of the Akron Regional Office. In addition to the ODYS, the other Defendants are the former Director of ODYS, Gino Natalucci-Persichetti, the former Administrator of the Akron Regional Office of ODYS, Karen Lombardi, and a former secretary in the Akron office and Plaintiff's former immediate supervisor, Linda Duckworth. Defendant Natalucci-Persichetti is named in his official capacity only and

Defendants Lombardi and Duckworth are named in both their official and individual capacities. (Compl. ¶¶ 5-7).

Plaintiff asserts a 42 U.S.C. § 1983 claim for violation of her Fourteenth Amendment right to due process, an O.R.C. § 4112 claim for religious discrimination and retaliation, and a claim for wrongful discharge.

Plaintiff began her employment with ODYS on March 19, 1993 as a Communications/Security Officer. On March 19, 1994, Plaintiff was promoted to the position of Office Assistant 3. In June 1994, Plaintiff reported unlawful acts by Defendant Linda Duckworth and her husband, such as the use of state resources for personal use. Plaintiff claims that as a result of this whistleblowing, she was harassed continuously up through January 30, 2003, when she was placed on involuntary disability separation.

On November 3, 2002, through February 3, 2003, Plaintiff was on an approved short-term disability leave. Plaintiff's disability stemmed from a work-related incident when she was employed as a police officer for the Perry Township Police Department in Stark County, Ohio. This incident occurred on April 1, 1988, and Plaintiff sustained injuries from an assault by a drunk driver.

On January 30, 2003, Plaintiff was informed by Roslyn Bertrand, Personnel Director for the Akron Region of ODYS, that she was put on "involuntary disability separation" ("IDS") pursuant to O.A.C. § 123:1-33-02 and O.R.C. § 124.03(A). Plaintiff responded that she was returning to work on February 3, 2003, in accordance with a release from her doctor. On February 3, 2003, Plaintiff reported to work but Ms. Bertrand sent her home and advised her that she could only apply for reinstatement every three months.

Ohio Administrative Code § 123:1-33-02 on involuntary disability separation and pre-separation hearing provides:

> (A) An appointing authority shall request that an employee submit to a medical or psychological examination, conducted in accordance with rule 123:1-33-01 of the Administrative Code, prior to involuntarily disability separating the employee unless:
>
> (1) The employee is hospitalized at the time such action is to be taken, or
>
> (2) The employee has exhausted his or her disability leave benefits.
>
> (B) When an appointing authority has received the results of a medical or psychological examination and initially determines that an employee is incapable of performing the essential job duties of the employee's assigned position due to a disabling illness, injury, or condition, the appointing authority shall institute pre-separation proceedings. Under those proceedings, a hearing shall be scheduled and advance written notice of at least seventy-two hours shall be provided to the employee. If the employee does not waive the right to a hearing, then at that hearing the employee has a right to examine the appointing authority's evidence of disability, to rebut that evidence, and to present testimony and evidence on the employee's own behalf.
>
> (C) If the appointing authority determines, after weighing the testimony presented and evidence admitted at the pre-separation hearing, that the employee is capable of performing his or her essential job duties, then the involuntary disability process shall cease and the employee shall be considered fit to perform his or her essential job duties. If the appointing authority determines, after weighing the testimony presented and the evidence admitted at the pre-separation hearing, that the employee is unable to perform his or her essential job duties, then the appointing authority shall issue an involuntary disability separation order.
>
> (D) The effective date of separation, for the purpose of reinstatement, shall be based on the date in which the employee was no longer in active work status due to the disabling illness, injury, or condition. An employee who has been involuntarily disability separated is not prohibited from applying for disability leave benefits. The total continuous time of absence due to the disabling illness, injury, or condition shall not exceed three years for purposes of reinstatement rights under this chapter.
>
> (E) An employee so separated shall have the right to appeal in writing to the personnel board of review within ten days following the date the order is served.
>
> (F) The appointing authority shall notify the employee, at the time the involuntary

disability separation order is provided to the employee, of the required procedures
to apply for reinstatement.

Pursuant to Ohio Administrative Code § 123:1-33-04, a separated employee has the right to apply for reinstatement once every three months. Reinstatement rights extend for three years, after which the employee is deemed to have been permanently separated from the civil service. *See* O.A.C. § 123:1-33-04(J).

Plaintiff filed the instant action on January 12, 2005, asserting that her due process rights were violated when she was placed on involuntary disability separation. Plaintiff claims that she was never served with an order of involuntary disability separation until the effective date, January 30, 2003, nor was she provided with notice or an opportunity to present medical evidence to contradict Defendants' conclusion that she was unable to work.

Plaintiff claims that she has exhausted her administrative remedies with respect to challenging the involuntary disability separation by filing an appeal with the State Personnel Board of Review, which remains pending, and by requesting reinstatement on a quarterly basis until she was reinstated on November 4, 2003. From January 30, 2003, until this reinstatement on November 4, 2003, Plaintiff claims she was denied her property rights in continued employment

As a result of the alleged actions by Defendants, Plaintiff claims she has suffered loss of wages, loss of pension benefits, loss of insurance benefits, loss of other fringe benefits, loss of the opportunity to be able to continue the gainful employ in which she has been engaged for the prior years, loss of future earnings and front-pay, loss of reputation, humiliation, embarrassment, and loss of self-esteem, adverse health effects, cost of relocation to seek other gainful employment, and loss of time and money in endeavoring to protect herself from Defendants'

unlawful retaliation, including costs and reasonable attorneys' fees of this action.  (Compl. ¶ 30).

## II.  Rule 12(c) Standard

The standard governing a motion for judgment on the pleadings is set forth in Rule 12(c) of the Federal Rules of Civil Procedure, which provides:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.  If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Rule 12(c) motions for judgment on the pleadings are subject to the same analysis as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  E.E.O.C. v. J.H. Routh Packing Co., 246 F.3d 850, 851 (6th Cir. 2001).

A motion for judgment on the pleadings requires the court to "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, then determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief."  Zigler v. IBP Hog Market, 249 F.3d 509, 511-12 (6th Cir. 2001).  "The court's inquiry is limited to whether the challenged pleadings set forth allegations sufficient to make out the elements of a right to relief."  Branch Int'l Servs., Inc. v. Budde, 890 F. Supp. 659, 661-62 (6th Cir. 1996).

## III.  Discussion

**A.  Plaintiff's Pre-Deprivation Due Process Claim**

Plaintiff has alleged that she was deprived of pre-deprivation due process because she was not given notice and the opportunity to be heard prior to being placed on involuntary disability separation.  Plaintiff claims that she has this right according to Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985).  (Compl. ¶ 15).  Defendants argue that due process does not request a pre-deprivation hearing and even if such hearing were required, Plaintiff was given notice and opportunity to be heard.  Defendants therefore are requesting the Court to dismiss the case and/or to grant them qualified immunity from Plaintiff's claims.

**1.      Individually named Defendants Karen Lombardi and Linda Duckworth Qualified Immunity Defense.**

Qualified immunity protects government officials, sued in their personal capacities for performing discretionary functions, from litigation and liability.  To defeat qualified immunity, the plaintiff must show: 1) that a constitutional right was violated; and 2) that the right was clearly established (whether a reasonable officer would have had fair warning that the acts the defendant performed were unlawful). Jackson v. Leighton, 168 F.3d 903, 909 (6th Cir. 1999).  While qualified immunity is an affirmative defense to be asserted by the defendant, the ultimate burden of proof is on the plaintiff to demonstrate that the defendant is not entitled to qualified immunity.  Gardenhire v. Schubert, 205 F.3d 303, 310-11 (6th Cir. 2000).

This court may dismiss Plaintiff's complaint only if it is clear that no violation of a clearly established constitutional right could be found under any set of facts that could be proven consistent with the allegations or pleadings. *See* Cooper v. Parrish, 203 F.3d 937, 944 (6th Cir. 2000). "Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200 (2001).  It is an immunity from suit rather than a

mere defense to liability. Id. Therefore, "where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." Id. The rationale behind determining the issue of qualified immunity early in the litigation is the desire to avoid the substantial costs of litigation and the distraction created by taking officials away from their governmental duties. Vaughn v. United States SBA, 65 F.3d 1322, 1326 (6th Cir. 1995). While these concerns are valid, courts must also be careful in making rulings so hastily on the issue of qualified immunity for fear of placing our liberal pleading standards in jeopardy. Id.

To maintain a procedural due process claim under § 1983, Plaintiff must establish that she has a protected property interest in continued employment. Cleveland Bd. of Education v. Loudermill, 470 U.S. 532, 538 (1985) (*citing* Bd. of Regents v. Roth, 408 U.S. 564, 576-78 (1972)). Defendants do not dispute that Plaintiff had a property interest in her continued employment with ODYS.

To satisfy due process, a public employee who has a protected property interest must be afforded notice, the opportunity to respond at a pre-termination hearing prior to discharge, and post-termination review. Loudermill, 470 U.S. at 547-48. An elaborate, full evidentiary hearing is not required prior to termination. Id. at 545. "Rather, the pre[-]termination hearing is to provide an initial check against mistaken conclusions, 'essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.'" Farhat v. Jopke, 370 F.3d 580, 595 (6th Cir. 2004)(*quoting* Loudermill, 470 U.S. at 545-46).

The Sixth Circuit has also recognized that, generally, in the pre-termination stage, due

process does not require a neutral and impartial decisionmaker.  Id. at 595; Duchesne v. Williams, 849 F.2d 1004, 1007-08 (6th Cir. 1988). However, the Court acknowledged "that there may be cases . . . in which the supervisory official is so biased that the Loudermill 'right-of-reply' process is meaningless."  Duchesne, 849 U.S. at 1008.  In those circumstances, the Court relies on the existence of a "full post-termination adversary, trial-type hearing" with a neutral decisionmaker "to ferret out bias, pretext, deception and corruption by the employer in discharging the employee." Id.

In the present case, Plaintiff alleges that she was not afforded due process prior to being placed on involuntary disability separation and that this right is clearly established under Loudermill.  In Loudermill, the Court held that a classified civil servant with tenure rights established by O.R.C. § 124.34 was entitled to notice of the "charges" against him and some opportunity to respond before being removed for disciplinary reasons.  There was no disability involved in this case, but rather the employee was terminated for lying on his employment application.  The Loudemill court reached its conclusion by balancing the due process interests identified in Mathews v. Eldridge, 424 U.S. 319, 335 (1976), which are "the private interest in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination."  Loudermill, 470 U.S. at 642-43.  The Court held that all that was required was notice of the proposed action and "[t]he opportunity to present reasons, either in person or in writing, why proposed action should not be taken."  Id. at 546.  The Court also cautioned that "there are, of course, some situations in which a postdeprivation hearing will satisfy due process requirements."  Id. at 542.

In a later case, Gilbert v. Homar, 520 U.S. 924 (1997), the Court considered whether a Loudermill hearing was required before suspending a university policeman without pay, after he had been arrested by state police and charged with a drug felony.  Applying the Mathews factors, the Court concluded that no hearing was required as the employee was being temporarily suspended without pay, not subjected to a final deprivation like the employee in Loudermill.  In addition, the court noted that the university had a strong interest in maintaining public confidence in its police force and that the only purpose of a pre-termination hearing was "whether there are reasonably grounds to believe the charges against the employee are true and support the proposed action," but this had been accomplished simply by the filing of charges.  Id. at 933.

Defendants seem to be arguing that the right to a pre-deprivation hearing before imposing involuntary disability separation is not a clearly established right.  Defendants argue and the Court agrees that there is no case that has determined whether a pre-deprivation hearing is necessary before imposing an involuntary disability separation against a tenured public employee.  Plaintiff have not only failed to cite any clearly established constitutional right that Defendants have violated, but she has failed to allege certain facts that the individual Defendants did to violate any such right.  Plaintiff has therefore failed to establish a clearly established constitutional right was violation and the individual Defendants named in their individual capacities, Karen Lombardi and Linda Duckworth, are entitled to qualified immunity and dismissed from the case.

**2.      Remaining Defendants**

The remaining Defendants ODYS and Gino Natalucci-Persichetti named in their official capacities are not entitled to qualified immunity.  Therefore, the Court will examine whether they are entitled to judgment on the pleadings on Plaintiff's claims against them.  Plaintiff has asserted to claims against these defendants: that they violated her right to due process and that she was retaliated against for reporting unlawful acts.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983.  All § 1983 violations depend on the plaintiff's ability to plead and prove that a defendant: 1) acting under the color of state law; 2) deprived a plaintiff of a right secured by the Constitution or law of the United States.  Paul v. Davis, 424 U.S. 693, 696-97 (1976).

"Due process is flexible and calls for such procedural protections as the particular situation demands."  Morrissey v. Brewer, 408 U.S. 471, 481 (1972). This Court has recognized, on many occasions, that where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause. *See*, *e.g.*, United States v. James Daniel Good Real Property, 510 U.S. 43, 53, 126 L. Ed. 2d 490, 114 S. Ct. 492 (1993).

As illustrated above, the Defendants offer two alternative theories for why they should be entitled to judgment in their favor.  Defendants assert that Plaintiff was not entitled to a hearing prior to being placed on involuntary disability separation, and even if she was, she had the opportunity to be heard.  Defendants offer that Gilbert is the most instructive case regarding placing someone on involuntary disability separation because it is a temporary suspension, not like termination in Loudermill.  While the Court is inclined to agree that this case is more like Gilbert in that Plaintiff's placement on involuntary disability separation was not final, she did

have the right to reapply, it is debatable. Nonetheless, the Court need not engage in such analysis. Defendants are correct in asserting that Plaintiff's complaint is lacking specific, non-conclusory allegations supporting her claims. In fact, Plaintiff does not even mention specific acts by each Defendant, but rather groups them all together in asserting her claims. This is not sufficient.

While Plaintiff simply makes conclusory allegations that she was deprived of her due process right and retaliated against, Defendants, on the other hand, do not offer much to contradict Plaintiff's arguments. In fact, neither party has provided the Court with a detailed account of the events prior to and while placing Plaintiff on involuntary disability status. There is no mention of whether or not a doctor's exam was conducted, whether formal notice was given to Plaintiff of the meeting, or even what exactly was said during the meeting on January 30, 2003. Therefore, the Court cannot award judgment on the pleadings to Defendants as the Plaintiff has alleged some facts that may support a claim.

**IV. Disposition**

Based on the above, the Court **GRANTS** Defendants' Motion for Qualified Immunity as to Defendants Lombardi and Duckworth; and **DENIES** Defendants' Motion for Judgment on the Pleadings. (Doc. 6).

The Clerk shall remove Doc. 6 from the Court's pending motions list.

**IT IS SO ORDERED.**

           **/s/ George C. Smith**
           **GEORGE C. SMITH, JUDGE**
           **UNITED STATES DISTRICT COURT**